BARTON, KLUGMAN & OETTING LLP
Thomas E. McCurnin (SBN 103762)
Terry L. Higham APLC (SBN 150726)
350 South Grand Avenue
Suite 2200
Los Angeles, CA 90071-3485
Telephone: 213-621-4000
Facsimile: 213-625-1832
E-mail: tmccurnin@bkolaw.com
t.higham@bkolaw.com

Attorneys for Plaintiff
QUICK BRIDGE FUNDING, LLC

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| QUICK BRIDGE FUNDING, LLC, a California Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>DOUBLE RAFTER H CONSTRUCTION COMPANY, L.L.C. a Texas Limited Liability Company; TRAEGER HAMILTON, an individual,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR MONEY**<br><br>1. **Breach of Promissory Note**<br>2. **Breach of Guaranty**<br><br>**DEMAND FOR JURY TRIAL** |

Defendant QUICK BRIDGE FUNDING, LLC ("Plaintiff") alleges:

**Jurisdiction and Venue**

1.  Plaintiff QUICK BRIDGE FUNDING, LLC is a California limited liability company with its principal place of business in the City of Irvine, County of Orange, State of California and is domiciled in the State of California. Plaintiff is a licensed California Financial Lender, License No. 603J292. Pursuant to Johnson v. Columbia Properties Anchorage, LP, 437 F.3d 894 (9th Cir. 2006), The Plaintiff has five (5) members as follows:

///

///

(a)   The first member of the limited liability company is Isaac Capital, LLC which is a California limited liability company with its principal place of business in the city of Irvine, county of Orange, State of California. The sole member of Isaac Capital is David Gilbert, an individual, who is a citizen of California and resides and is domiciled in the County of San Diego, State of California.

(b)   The second member of the limited liability company is AFG WC, LLC which is a California limited liability company with its principal place of business in the city of Irvine, county of Orange, State of California. There are three members of AFG WC, LLC, who are Brijesh Patel, Vishal Masani, and Shawn Donohue, who are all citizens of California and are all residents and are domiciled in the County of Orange, State of California.

(c)   The third member of the limited liability company is JM Capital Group, LLC which is a California limited liability company with its principal place of business in the city of Irvine, county of Orange, State of California. The sole member of JM Capital Group, LLC is Jason Osiecki who is a citizen of California and resides and is domiciled in the County of Orange, State of California.

(d)   The fourth member of the limited liability company is Jolie Investments, LLC which is a California limited liability company with its principal place of business in the city of Irvine, county of Orange, State of California. The sole member of Jolie Investments, LLC is Trevor Klein who is a citizen of California and resides and is domiciled in the County of San Diego, State of California.

(e)   The fifth member of the limited liability company is Ben Gold, an individual, who is a citizen of California, and resides and is domiciled in the County of Orange, State of California.

2.   Defendant DOUBLE RAFTER H CONSTRUCTION COMPANY,

L.L.C. ("Double Rafter") is a Texas Limited Liability Company with its principal place of business in the city of Pleasanton, County of Atascosa, State of Texas and is domiciled in the State of Texas. This LLC is comprised of a single member, Traeger Hamilton, who resides, is citizens of, and is domiciled in the city of Pleasanton, County of Atascosa, State of Texas.

3. Defendant TRAEGER HAMILTON is an individual who resides, is a citizen of, and is domiciled in the city of Pleasanton, County of Atascosa, State of Texas.

4. The amount in controversy exceeds $75,000.

5. Because Plaintiff and all Defendants are diverse, the Court has subject matter jurisdiction under 28 U.S.C. § 1332.

6. Venue in this District is proper under 28 U.S.C § 1391(b)(2) and (3) because (a) The Promissory Note and Loan Agreement were all negotiated, signed, and performed in the County of Orange, State of California within the Central District of California. In addition, the Loan Agreement, section 20, provides that this loan was made in California and performed in the state of California; and (b) The Loan Agreement, section 15, contains a mandatory forum selection clause for the State of California.

**The Promissory Note**

7. On or about March 9, 2018, Defendant Double Rafter made, executed and delivered to BOFI Federal Bank, a national bank, a promissory note in the principal sum of One Hundred Fifty Thousand Dollars ($150,000) for business purposes and not primarily for personal, family or household purposes. In general the Bank loaned Defendant Double Rafter the sum of $150,000 and Defendant Double Rafter agreed to repay the Bank $202,500 in accordance with the terms and conditions set forth in the following documents entered into between Bank of the Internet and Defendant Double Rafter:

///

      (a)    Promissory Note dated March 9, 2018 wherein Defendant Double Rafter borrowed monies set forth in a Business Loan Agreement and agreed to repay said monies in accordance with the Business Loan Agreement. A true and correct copy of the Promissory Note is attached hereto as Exhibit "1."

      (b)    Business Loan Agreement dated March 9, 2018 wherein Defendant Double Rafter memorialized its loan of $150,000 and agreed to repayment terms as set forth in the Business Loan Agreement. The Business Loan Agreement also contains guaranty agreements for the individual Defendant, Traeger Hamilton. A true and correct copy of the Business Loan Agreement is attached hereto, as Exhibit "2."

**Assignments**

8.    On or about March 16, 2018, Bank of the Internet assigned the obligation evidenced by the Promissory Note and the Business Loan Agreement to WCL Holdings I LLC, a California limited liability company.

9.    Plaintiff Quick Bridge is the servicer for WCL Holdings I LLC and has the authority to collect, compromise, sue and collect all balances for the holder, WCL Holdings I, LLC.

**Guaranties**

10.    The Business Loan Agreement, Exhibit "2" contains a guaranty provision whereby Defendant Traeger Hamilton unconditionally guaranteed the obligations of Defendant Double Rafter in connection with the obligations set forth in the Promissory Note and the Business Loan Agreement.

**Breach and Default**

11.    On or about April 20, 2018, Defendant Double Rafter failed to make a payment under the terms of the Business Loan Agreement, which constituted a default under § 13 of the Business Loan Agreement, and Plaintiff declared a default on April 20, 2018, accelerating the balance due and owing to Plaintiff Quick Bridge Funding as to the Note and the guaranty agreement. The amount due

and owing is the sum of $172,720.

12. Plaintiff and its assignors have performed all conditions required of them to be performed.

13. The Loan Agreement, Exhibit "2," § 12, provides that in the event that the lender is required to enforce the terms of the Loan Agreement, it shall be entitled to recover its attorney fees. In addition, the Promissory Note, Exhibit "1," page 1, also provides for the recovery of attorneys' fees in the event that the Promissory Note is enforced.

## FIRST CLAIM FOR RELIEF

(For Breach of Promissory Note, Against Defendant Double Rafter)

14. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 13 inclusive, with the same force and effect as if fully set forth herein.

15. As a result of the aforesaid breach in the Promissory Note and the Loan Agreement, Exhibits "1" and "2", there is a default under the terms of the Promissory Note and the Loan Agreement, and Plaintiff is entitled to a judgment in the sum of $ 172,720 plus interest at the legal rate from and after April 13, 2018 and its reasonable attorneys' fees.

## SECOND CLAIM FOR RELIEF

(For Breach of Guaranty Against Defendant Traeger Hamilton)

16. Plaintiff repeats and incorporates by reference the allegations contained in paragraphs 1 through 15 inclusive, with the same force and effect as if fully set forth herein.

17. As a result of the aforesaid breach in the Promissory Note and the Loan Agreement, Exhibits "1" and "2", there is a default under the terms of the guaranty agreement contained in the Loan Agreement, Exhibit "2,", and Plaintiff is entitled to a judgment against Defendant Danny Traeger Hamilton in the sum of $172,720 plus interest at the legal rate from and after April 13, 2018 and its

reasonable attorneys' fees.

## PRAYER

Plaintiff, Quick Bridge Funding, LLC prays for Judgment against Defendants as follows:

1. For the principal sum of $172,720
2. For interest at the legal rate from and after April 13, 2018
3. For its reasonable attorneys' fees, subject to proof and court approval

May 1, 2018                BARTON, KLUGMAN & OETTING LLP

By: *Thomas E. McC*
Thomas E. McCurnin
Attorneys for Plaintiff
QUICK BRIDGE FUNDING, LLC

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in the aforesaid action, pursuant to FRCP 38.

May 1, 2018                BARTON, KLUGMAN & OETTING LLP

By: *Thomas E. McC*
Thomas E. McCurnin
Attorneys for Plaintiff
QUICK BRIDGE FUNDING, LLC

W:\Working\McCurnin\Quick Bridge Funding\Double Rafter\Pleadings\Federal Complaint v2.docx

Exhibit 1

 

# Business Loan Agreement
(Business Loan for Commercial Purposes Only)

| Agreement #: ▆▆▆▆▆ | Date: 03/09/2018 |
|---|---|
| Borrower (Legal and DBA): Double Rafter H Construction Company, L.L.C. ||
| Mailing Address: PO BOX 1083 | City/State/Zip: PLEASANTON, TX 78064 |
| Business Address: 1434 COUNTY ROAD 422 | City/State/Zip: PLEASANTON, TX 78064 |
| Business Phone: (▆▆▆) ▆▆▆-5611 | Business Fax: |
| Email Address: lane@doublerafterh.com | Web Site (URL): |
| Federal Tax ID Number: ▆▆▆▆▆972 ||
| Name of Primary Authorized Signer: Traeger Hamilton ||
| Name of Signer #2: ||
| Name of Signer #3: ||
| Name of Signer #4: ||

| Lender: **BofI Federal Bank** | Servicer: **Quick Bridge Funding** |
|---|---|
| Loan Amount: $150,000.00 ||
| Origination Fee: $3,000.00 * (2.00%) ||
| Total Repayment Amount: $202,500.00 ||

*Borrower agrees that Lender or Servicer may debit or otherwise withdraw such fee from Borrower's account on the first business day following the funding date.

| **Payment Schedule** ||
|---|---|
| See attached "Business Loan Agreement Exhibit A" | 34 Weekly Payments |
| Please initial this document here *TZH* ||

## Authorization Agreement for Direct Deposits (ACH Credit) and Direct Payments (ACH Debit)

This Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) is part of (and incorporated by reference into) the Business Loan Agreement relating to Quick Bridge Funding, LLC, a California limited liability company.

**DISBURSEMENT OF LOAN PROCEEDS.** By signing below, Borrower authorizes BofI Federal Bank, ("Lender") and Quick Bridge Funding, LLC, a California limited liability company (and/or its successors and assigns) ("Servicer") or its designee to disburse the Loan proceeds by initiating an ACH Credit to the checking account indicated below (or a substitute checking account Borrower later identifies and is acceptable to Lender) (hereinafter referred to as the "Designated Checking Account") in the disbursal amount set forth in the accompanying Business Loan Agreement. This authorization is to remain in full force and effect until Lender has received written notification from Borrower of its termination in such time and in such manner as to afford Lender and Borrower's depository bank a reasonable opportunity to act on it.

**AUTOMATIC PAYMENT PLAN.** Enrollment in Lender's Automatic Payment Plan is required for Loan approval. By signing below, Borrower agrees to enroll in this Automatic Payment Plan and authorizes Lender or its designee to collect payments required under the terms of Borrower's Business Loan Agreement by initiating ACH Debit entries to the Designated Checking Account. Borrower authorizes Lender or its designee to increase the amount of any scheduled ACH Debit entry or assess multiple ACH Debits for the amount of any previously scheduled payment(s) that was not paid as provided in the payment schedule and any unpaid Fees. This authorization is to remain in full force and effect until Lender or its designee has received written notification from Borrower of its termination in such time and in such manner as to afford Lender and Borrower's depository bank a reasonable opportunity to act on it. Lender or its designee may suspend or terminate Borrower's enrollment in the Automatic Payment Plan immediately if Borrower fails to keep Borrower's designated checking account in good standing or if there are insufficient funds in Borrower's checking account to process any payment. If Borrower revokes the authorization or Lender suspends or terminates Borrower's enrollment in the Automatic Payment Plan, Borrower still will be responsible for making timely payments pursuant to the alternative payment methods described in the Business Loan Agreement.

**PROVISIONAL PAYMENT:** Credit given by us to you with respect to an automated clearing house ("ACH") credit entry is provisional until we receive final settlement for such entry through a Federal Reserve Bank. If we do not receive such final settlement, you are hereby notified and agree that we are entitled to a refund of the amount credited to you in connection with such entry, and the party making to you via such entry (i.e. the originator of the entry) will not be deemed to have paid you in the amount of such entry.

**NOTICE IF RECEIPT OF ENTRY:** Under the operating rules of the National Automated Clearing House Association, which are applicable to ACH transactions involving your account, we are not required to give next day notice to you of receipt of an ACH item and we will not do so. However, we will continue to notify you of the receipt of payments in the periodic statement we provide to you.

**CHOICE OF LAW:** We may accept on your behalf payments to your account which have been transmitted through one or more Automated Clearing Houses ("ACH") and which are not subject to the Electronic Fund Transfer Act and your rights and obligations with respect to such payments will be construed in accordance with and governed by the laws of the state of California, unless it has otherwise specified in a separate agreement that the law of some other state will govern.

**BUSINESS PURPOSE ACCOUNT.** By signing below, Borrower attests that the Designated Checking Account was established for business purposes and not for personal, family or household purposes.

**ACCOUNT CHANGES.** Borrower agrees to notify Lender, and its Loan Servicing Agent, promptly, in writing, if there are any changes to the account and routing numbers of the Designated Checking Account. In the event that this account is deemed closed, insufficient or frozen, or a stop payment has been issued, and Lender obtains information that Borrower maintains a different Checking Account, then Borrower hereby authorizes Lender, without notice or further permission, to replace that new account information on this form and begin immediate withdrawals based on the newly obtained account information.

**MISCELLANEOUS.** Lender is not responsible for any fees charged by Borrower's bank as the result of credits or debits initiated under this agreement. The origination of ACH transactions to Borrower's account must comply with the provisions of U.S. law.

Depository Name: __Prosperity Bank__

Branch: _____   City: _____   State: _____   Zip: _____

Routing Number: ____2655   Account Number: ____2719

Print Business Name: Double Rafter H Construction Company, L.L.C.   Fed Tax ID #: ____972

Signature: _____   Title: __Member__   Date: __03/09/2018__

2

1. **INTRODUCTION.** This Business Loan Agreement ("Agreement") governs your business loan ("Loan") made by BofI Federal Bank and serviced by Quick Bridge Funding, LLC, a California limited liability company. Please read it and keep it for your reference. In this Agreement, the words "you," "your" and "Borrower" means each individual or entity that signs this Agreement or on whose behalf this Agreement is signed. The word "Lender," "we," "us" and "our" mean BofI Federal Bank or its successor(s), assign(s), or designee(s).
2. **EFFECTIVE DATE.** This Agreement begins on the date we accept this Agreement in California. Borrower understands and agrees that Lender may postpone, without penalty, the disbursement of amounts to Borrower until all required security interests have been perfected and Lender has received all required personal guarantees or other documentation.
3. **AUTHORIZATION.** Borrower agrees that the Loan made by Lender to Borrower will be conclusively deemed to have been authorized by Borrower and to have been made pursuant to a duly authorized request therefore on its behalf.
4. **LOAN FOR BUSINESS/COMMERCIAL PURPOSES ONLY. The proceeds of the requested Loan may be used for the specific purposes as set forth in the Use of Proceeds Certification below, and is expressly to be used for general business purposes or working capital needs. The Loan will not be used for personal, family or household purposes. Borrower understands that Borrower's agreement not to use the Loan proceeds for personal, family or household purposes means that certain important duties imposed upon entities making loans for consumer/personal purposes, and certain important rights conferred upon consumers, pursuant to federal or state law will not apply to the Loan or the Agreement. Borrower also understands that Lender will be unable to confirm whether the use of the Loan proceeds conforms to this section. Borrower agrees that a breach by Borrower of the provisions of this section will not affect Lender's right to (i) enforce Borrower's promise to pay for all amounts owed under this Agreement, regardless of the purpose for which the Loan is in fact obtained or (ii) use any remedy legally available to Lender, even if that remedy would not have been available had the Loan been made for consumer purposes.**
5. **PROMISE TO PAY.** Borrower agrees to pay Lender the Total Repayment Amount shown in accordance with the Payment Schedule shown on the face page of this Business Loan Agreement. Borrower agrees to enroll in Lender's Automatic Payment Plan and authorizes Lender to collect required payments as provided in the accompanying Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits). All payments made hereunder will be paid in in U.S. Dollars and will be paid free and clear of, and without reduction by reason of, any deduction, setoff, or counterclaim.
6. **APPLICATION OF PAYMENTS.** Lender reserves the right to apply payments to Borrower's Loan in any manner Lender chooses in Lender's sole discretion.
7. **SECURITY INTEREST.** Borrower hereby grants to Lender, the secured party hereunder, a continuing security interest in and to any and all "Collateral" as described below to secure payment and performance of all debts, liabilities and obligations of Borrower to Lender hereunder and also any and all other debts, liabilities and obligations of Borrower to Lender of every kind, now existing or hereafter arising, regardless of how they arise or by what agreement or instrument they may be evidenced without limitation, all interest, other fees and expenses (all hereinafter called "Obligations"). The Collateral includes the following property that Borrower now owns or will acquire or create immediately upon the acquisition or creation thereof: (i) any and all amounts owing to Borrower now or in the future from any merchant processor(s) processing charges made by customers of Borrower via credit card or debit card transactions; and (ii) all other tangible and intangible personal property, including, but not limited to (a) accounts and accounts receivable, (b) inventory, (c) equipment, (d) investment property, including certificated and un-certificated securities, securities accounts, security entitlements, commodity contracts and commodity accounts, (e) instruments, including promissory notes (f) chattel paper, including tangible chattel paper and electronic chattel paper, (g) documents, (h) letter of credit rights, (i) deposit accounts, (j) commercial tort claims, (k) general intangibles, including payment intangibles and software and (l) as-extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto. The security interest granted hereunder shall not terminate upon the payment of the obligations evidenced in this agreement, and shall continue to secure the existence of any future advances made within five years of the perfection of this security interest.
8. **PROTECTING THE SECURITY INTEREST.** Borrower agrees that Lender and/or Lender's Representative may file any financing statement, lien entry form or other document Lender and/or Lender's Representative requires in order to perfect, amend or continue Lender's security interest in the Collateral and Borrower agrees to cooperate with Lender and Lender's Representative as may be necessary to accomplish said filing and to do whatever Lender and Lender's Representative deems necessary to protect Lender's security interest in the Collateral. In this Agreement "Lender's Representative" means any entity or individual affiliated with Lender that is designated by Lender to serve in such capacity.
9. **BORROWER'S REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants that: (i) Borrower will comply with all laws, statutes, regulations and ordinances pertaining to the conduct of Borrower's business and promises to hold Lender harmless from any damages, liabilities, costs, expenses (including attorneys' fees) or other harm arising out of any violation thereof
10. **INTEREST AND FEES.** Borrower agrees to pay the Interest Charge in full as set forth in the accompanying Business Loan Agreement. In addition to any other fees described in the Agreement, Borrower agrees to pay the following fees:
A. Origination Fee: A one-time Origination Fee in the amount set forth in the accompanying Business Loan Agreement. Borrower agrees that this fee will be immediately deducted from the proceeds of Borrower's Loan.
B. Returned Payment Fee: A Returned Payment Fee in the amount of $25.00 for each payment returned.
11. **FINANCIAL INFORMATION AND REEVALUATION OF CREDIT.** Borrower and each guarantor (if any) authorize Lender to obtain business and personal credit bureau reports in Borrower's and any guarantor's name, respectively, at any time and from time to time for purposes of deciding whether to approve the requested Loan or for any update, renewal, extension of credit or other lawful purpose. Borrower and each guarantor (if any) agree to submit current financial information, a new credit application, or both, in Borrower's name and in the name of each guarantor, respectively, at any time promptly upon Lender's request. Borrower authorizes

Initials 7ZH   3

Lender to act as Borrower's agent for purposes of accessing and retrieving transaction history information regarding Borrower from Borrower's designated merchant processor(s). Lender may report Lender's credit experiences with Borrower and any guarantor of Borrower's Loan to third parties as permitted by law. Borrower also agrees that Lender may release information to comply with governmental reporting or legal process that Lender believes may be required, whether or not such is in fact required, or when necessary or helpful in completing a transaction, or when investigating a loss or potential loss. Borrower is hereby notified that a negative credit report reflecting on Borrower's credit record may be submitted to a credit reporting agency if Borrower fails to fulfill the terms of Borrower's credit obligations hereunder.

**12. ATTORNEYS' FEES AND COLLECTION COSTS.** To the extent not prohibited by applicable law, Borrower will pay to Lender on demand any and all expenses, including, but not limited to, collection costs, all attorneys' fees and expenses, and all other expenses of like or unlike nature which may be expended by Lender to obtain or enforce payment of Obligations either as against Borrower or any guarantor or surety of Borrower or in the prosecution or defense of any action or concerning any matter growing out of or connected with the subject matter of this Agreement, the Obligations or the Collateral or any of Lender's rights or interests therein or thereto, including, without limiting the generality of the foregoing, any counsel fees or expenses incurred in any bankruptcy or insolvency proceedings and all costs and expenses (including search fees) incurred or paid by Lender in connection with the administration, supervision, protection or realization on any security held by Lender for the debt secured hereby, whether such security was granted by Borrower or by any other person primarily or secondarily liable (with or without recourse) with respect to such debt, and all costs and expenses incurred by Lender in connection with the defense, settlement or satisfaction of any action, claim or demand asserted against Lender in connection therewith, which amounts will be considered advances to protect Lender's security, and will be secured.

**13. DEFAULT.** The occurrence of any one or more of the following events (herein, "Events of Default") will constitute, without notice or demand, a default under this Agreement and all other agreements between Lender and (a) Lender is unable to collect any Automatic Payment Plan payment on three consecutive dates due and/or, Borrower fails to pay any Obligations on three consecutive dates due; (b) Borrower fails to comply with, promptly, punctually and faithfully perform or observe any term, condition or promise within this Agreement; (c) the determination by Lender that any representation or warranty heretofore, now or hereafter made by Borrower to Lender, in any documents, instrument, agreement, or paper was not true or accurate when given; (d) any act by, against, or relating to Borrower, or its property or assets, which act constitutes the application for, consent to, or sufferance of the appointment of a receiver, trustee or other person, pursuant to court action or otherwise, over all, or any part of Borrower's property; (e) execution of an assignment for the benefit of the creditors of Borrower, or the occurrence of any other voluntary or involuntary liquidation or extension of debt agreement for Borrower; (f) the failure by Borrower to generally pay the debts of Borrower as they mature; (g) adjudication of bankruptcy or insolvency relative to Borrower; (h) the entry of an order for relief or similar order with respect to Borrower in any proceeding pursuant to Title 11 of the United States Code entitled "Bankruptcy" (the "Bankruptcy Code") or any other federal bankruptcy law; (i) the filing of any complaint, application or petition by or against Borrower initiating any matter in which Borrower is or may be granted any relief from the debts of Borrower pursuant to the Bankruptcy Code or any other insolvency statute or procedure; (j) the termination of existence, dissolution or liquidation of Borrower or the ceasing to carry on actively any substantial part of Borrower's current business; (k) this Agreement will, at any time after its execution and delivery and for any reason, cease to be in full force and effect or will be declared null and void, or the validity or enforceability hereof will be contested by Borrower or any guarantor of Borrower denies it has any further liability or obligation hereunder; (l) any guarantor or person signing a support agreement in favor of Lender will repudiate, purport to revoke or fail to perform his or her obligations under his guaranty or support agreement in favor of Lender or any corporate guarantor will cease to exist; (m) any material change occurs in Borrower's ownership or organizational structure (acknowledging that any change in ownership will be deemed material when ownership is closely held).

**14. RIGHTS AND REMEDIES UPON DEFAULT.** Subject to applicable law, if an Event of Default occurs under this Agreement, at any time thereafter, Lender may exercise any one or more of the following rights and remedies:

A. <u>Refrain from Disbursing Loan Proceeds</u>: Lender may refrain from disbursing Borrower's Loan proceeds to Borrower's Designated Checking Account.

B. <u>Debit Amounts Due From Borrower's Accounts</u>: Lender may debit from Borrower's Designated Checking Account all Automatic Payment Plan payments that Lender was unable to collect and/or the amount of any other Obligations that Borrower failed to pay.

C. <u>Accelerate Indebtedness</u>: Lender may declare the entire Obligations immediately due and payable, without notice of any kind to Borrower.

D. <u>Other Rights and Remedies</u>: Lender will have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender will have and may exercise any or all other rights and remedies it may have available at law, in equity or otherwise.

E. <u>Election of Remedies</u>: Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, any related documents, or by any other writing, will be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy will not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower under the Agreement, after Borrower's failure to perform, will not affect Lender's right to declare a default and exercise its remedies.

**15. CONSENT TO EXCLUSIVE JURISDICTION AND VENUE OF CALIFORNIA.** Borrower and Lender agree that any action or proceeding to enforce or arising out of this Agreement will be exclusively commenced in any court of the State of California or in the United States District Court for the District of California, and Borrower waives personal service of process and agrees that a summons and complaint commencing an action or proceeding in any such court will be properly served and confer personal jurisdiction if served by registered or certified mail to Borrower, or as otherwise provided by the laws of the State of California or the United States of America. Borrower and Lender agree that venue is proper in such courts.

**16. NO WAIVER BY LENDER.** No delay or omission on the part of Lender in exercising any rights under this Agreement, any

Initials *TZN*   4

related guaranty or applicable law will operate as a waiver of such right or any other right. Waiver on any one occasion will not be construed as a bar to or waiver of any right or remedy on any future occasion. All Lender's rights and remedies, whether evidenced hereby or by any other agreement, instrument or paper, will be cumulative and may be exercised singularly or concurrently.

**17. ASSIGNMENT.** This Agreement will bind and inure to the benefit of the respective successors and assigns of each of the parties hereto; provided, however, that Borrower may not assign this Agreement or any rights or duties hereunder without Lender's prior written consent and any prohibited assignment will be absolutely void. No consent to an assignment by Lender will release Borrower from its Obligations. Lender may assign this Agreement and its rights and duties hereunder and no consent or approval by Borrower is required in connection with any such assignment. Lender reserves the right to sell, assign, transfer, negotiate or grant participations in all or any part of, or any interest in Lender's rights and benefits hereunder. In connection with any assignment or participation, Lender may disclose all documents and information that Lender now or hereafter may have relating to Borrower or Borrower's business. To the extent that Lender assigns its rights and obligations hereunder to another party, Lender thereafter will be released from such assigned obligations to Borrower and such assignment will affect a notation between Borrower and such other party.

**18. SEVERABILITY.** If one or more provisions of this Agreement (or the application thereof) is determined invalid, illegal or unenforceable in any respect in any jurisdiction, the same will not invalidate or render illegal or unenforceable such provision (or its application) in any other jurisdiction or any other provision of this Agreement (or its application).

**19. NOTICES.** Except as otherwise provided in this Agreement, notice under this Agreement must be in writing. Notices will be deemed given when deposited in the U.S. mail, postage prepaid, first class mail; when delivered in person; or when sent by registered mail; by certified mail; or by nationally recognized overnight courier. Notice to Borrower will be sent to Borrower's last known address in Lender's records for this Loan. Notice to Lender may be sent to our servicer, Quick Bridge Funding, LLC, 410 Exchange, Suite 150, Irvine CA 92602.

**20. GOVERNING LAW (EXCLUSIVE TO CALIFORNIA).** Our relationship (including this Agreement and any claim, dispute or controversy (whether in contract, tort, or otherwise) at any time arising from or relating to this Agreement) will be exclusively governed by, and this Agreement will be exclusively construed in accordance with, applicable federal law and (to the extent not preempted by federal law) California law without regard to internal principles of conflict of laws. The legality, enforceability and interpretation of this Agreement and the amounts contracted for, charged and reserved under this Agreement will be exclusively governed by such laws. Borrower understands and agrees that (i) Lender is located in California, (ii) Lender makes all credit decisions from Lender's office in California, (iii) the Loan is made in California (that is, no binding contract will be formed until Lender receives and accepts Borrower's signed Agreement in California) and (iv) Borrower's payments are not accepted until received by Lender in California.

**21. WAIVER OF NOTICES AND OTHER TERMS.** Except for any notices provided for in this Agreement, Borrower and any person who has obligations pursuant to this Agreement (*e.g.*, a guarantor), to the extent not prohibited by applicable law hereby, waives demand, notice of nonpayment, notice of intention to accelerate, notice of acceleration, presentment, protest, notice of dishonor and notice of protest. To the extent permitted by applicable law, Borrower and any person who has obligations pursuant to this Agreement also agree: Lender is not required to file suit, show diligence in collection against Borrower or any person who has obligations pursuant to this Agreement, or proceed against any Collateral; Lender may, but will not be obligated to, substitute, exchange or release any Collateral; Lender may release any Collateral, or fail to realize upon or perfect Lender's security interest in any Collateral; Lender may, but will not be obligated to, sue one or more persons without joining or suing others; and Lender may modify, renew, or extend this Agreement (repeatedly and for any length of time) without notice to or approval by any person who has obligations pursuant to this Agreement (other than the party with whom the modification, renewal or extension is made).

**22. MONITORING, RECORDING AND ELECTRONIC COMMUNICATIONS.** In order to ensure a high quality of service for Lender's customers, Lender may monitor and/or record telephone calls between Borrower and Lender's employees or agents. Borrower acknowledges that Lender may do so and agrees in advance to any such monitoring or recording of telephone calls. Borrower also agrees that Lender may communicate with Borrower electronically by e-mail.

**23. ENTIRE AGREEMENT.** Any application Borrower signed or otherwise submitted in connection with the Loan, the accompanying Business Loan and Security Agreement Supplement and the Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) and any other documents required by Lender now or in the future in connection with this Agreement and Borrower's Loan are hereby incorporated into and made a part of this Agreement. This Agreement is the entire agreement of the parties with respect to the subject matter hereof and supersedes any prior written or verbal communications or instruments relating thereto.

**24. COUNTERPARTS; FAX SIGNATURES.** This Agreement may be executed in one or more counterparts, each of which counterparts will be deemed to be an original, and all such counterparts will constitute one and the same instrument. For purposes of the execution of this Agreement, fax signatures will be treated in all respects as original signatures.

**25. CUSTOMER SERVICE CONTACT INFORMATION.** If you have questions or comments about your Loan, you may contact our servicer, Quick Bridge Funding, LLC, c/o Accounting, 410 Exchange, Suite 150, Irvine, CA 92602.

**26. CERTIFICATION AND SIGNATURES.** By signing below or authorizing the person signing below to sign on its behalf, Borrower adopts and agrees to every provision without exception contained within this Business Loan Agreement and further certifies that Borrower has received a copy of this Agreement and that Borrower has read, understood and agreed to be bound by its terms. Each person signing below certifies that each person is signing on behalf of the Borrower in the capacity indicated below the signer's name and that such signer is authorized to execute this Agreement on behalf of or the in stated relation to Borrower.

Initials *TZH*    5

**Use of Proceeds Certification**

As referred to in Section 4, in addition to adopting and ratifying the foregoing, by signing below, the Borrower hereby certifies, acknowledges and understands that the proceeds from the **Loan will be used solely for business and commercial purposes only, and not for any personal, household or consumer use.**

**Borrower:** Double Rafter H Construction Company, L.L.C.

Signer #1: X _[signature]_  
**Name:** Traeger Hamilton  
**Title:** Member  
**Date:** 03/09/2018

Signer #2: X _____  
**Name:** _____  
**Title:** _____  
**Date:** 03/09/2018

Signer #3: X _____  
**Name:** _____  
**Title:** _____  
**Date:** 03/09/2018

Signer #4: X _____  
**Name:** _____  
**Title:** _____  
**Date:** 03/09/2018

**27. PERSONAL GUARANTY.** The undersigned (each a "Guarantor"), jointly and severally (if more than one), absolutely and unconditionally guarantee the prompt payment to Lender, including its successors and assignees, of any and all Obligations incurred by the Borrower pursuant to the Agreement. Each Guarantor further agrees to repay the Obligations on demand, without requiring Lender first to enforce payment against Borrower. This is a guarantee of payment and not of collection. This is an absolute, unconditional, primary, and continuing obligation and will remain in full force and effect until the first to occur of the following: (i) all of the Obligations have been indefeasibly paid in full, and Lender has terminated this Personal Guaranty, or (ii) 30 days after the date on which written notice of revocation is actually received and accepted by Lender. No revocation will affect: (i) the then existing liabilities of the revoking Guarantor under this Personal Guaranty; (ii) Obligations created, contracted, assumed, acquired or incurred prior to the effective date of such revocation; (iii) Obligations created, contracted, assumed, acquired or incurred after the effective date of such revocation pursuant to any agreement entered into or commitment obtained prior to the effective date of such revocation; or (iv) any Obligations then or thereafter arising under the agreements or instruments then in effect and then evidencing the Obligations. Each Guarantor waives all notices to which the Guarantor might otherwise be entitled by law, and also waives all defenses, legal or equitable, otherwise available to the Guarantor, including but not limited to exoneration. This Personal Guaranty will be exclusively construed in accordance with the laws of the State of California, and will inure to the benefit of Lender, its successors and assigns. **THIS GUARANTEE AND EACH GUARANTOR HEREBY AGREE TO CONSENT TO THE EXCLUSIVE VENUE AND JURISDICTION OF ANY COURT OF THE STATE OF CALIFORNIA FOR ALL MATTERS OR IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CALIFORNIA.**

Guarantor #1: X _[signature]_  
**Name:** Traeger Hamilton  
**Date:** 03/09/2018

Guarantor #2: X _____  
**Name:** _____  
**Date:** 03/09/2018

Guarantor #3: X _____  
**Name:** _____  
**Date:** 03/09/2018

Guarantor #4: X _____  
**Name:** _____  
**Date:** 03/09/2018

X _[signature]_  
Daniel Hefner - Bofl Federal Bank  
FVP, Head of Operations  
Specialty Finance & Strategic Partnership

X _[signature]_  
Nick Roberto – Quick Bridge Funding, LLC  
Chief Credit Officer

6


 

## Business Loan Agreement
## Exhibit A

Agreement #: ▇▇▇533-1
Date: 03/09/2018
**Business Legal Name**: Double Rafter H Construction Company, L.L.C.
**Re: Daily Payment**

This amendment to Borrower Business Loan Agreement "Amendment" is made as of 03/09/2018 between BofI Federal Bank (the "Lender"), Quick Bridge Funding, LLC, a California limited liability company (formerly known as Blackrock Lending Group, LLC) (the "Servicer") and Double Rafter H Construction Company, L.L.C. (the "Borrower"). The Lender, the Servicer and the Borrower are sometimes referred to herein collectively as the "Parties "and each as a "Party."

Whereas, the Parties desire to modify certain terms of the Business Loan Agreement dated: 03/09/2018.

In consideration of the above premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, do hereby agree and amend the Agreement as follows:

**1. The "Daily Payment", will be replaced by and with a "Weekly Payment"**

**2. The "Weekly Payment" will commence on the first Friday following the disbursement date and will contain:**

 **34 Weekly Payments of $5,955.88**

3. Without limiting the generality of Section 20 of the Agreement, Borrower acknowledges and agrees that pursuant to such Section of the Agreement, the Lender shall be entitled to receive from Borrower and/or Owner, and Borrower and/or Owner shall pay, all costs that Lender incurs as a result of there being insufficient funds in the Account or any other account of Borrower and/or Owners that Lender is authorized or permitted to debit pursuant to the Agreement.

4. The Agreement shall remain in full force and effect as modified by this Amendment. This Amendment shall be governed by and construed in accordance with the laws of the State of California without giving effect to the principles of conflicts of laws. This Amendment may be executed in counterparts, all of which together shall constitute one and the same instrument. Facsimile signatures shall be deemed to be original signatures and each party hereto may rely on a facsimile signature as an original for purposes of enforcing this Amendment.

IN WITNESS WHEREOF, each of the undersigned has executed, or has caused to be executed, this Amendment as of the date first written above.

**Borrower: Double Rafter H Construction Company, L.L.C.**

By: X _[signature]_

**Name: Traeger Hamilton**

**Title: Member**

**Date: 03/09/2018**

To the extent set forth herein and in the Business Loan Agreement, each of the parties is obligated upon their execution of the Amendment. The above-signed represents that he or she is authorized to sign this Amendment for Borrower and that the information provided in this and all of the Borrower's forms are true and accurate in all respects. If the information is false or inaccurate, the Borrower shall be deemed in material breach of all agreements between the Borrower and the Lender and the Lender shall be entitled to all remedies available under law.

**ADDITIONAL TERMS ARE SET FORTH IN THE BUSINESS LOAN AGREEMENT.**

10



## Business Loan Agreement
## Amendment (E)
## Pre-Payment

**Agreement #:** ███████533-1
**Date:** 03/09/2018
**Business Legal Name:** Double Rafter H Construction Company, L.L.C.
**Re: Pre-Payment**

This amendment ("Amendment") to Business Loan Agreement ███████ dated 03/09/2018 is made as of 03/09/2018 between BofI Federal Bank (the "Lender") and serviced by Quick Bridge Funding, LLC, a California limited liability as "Servicer" and Double Rafter H Construction Company, L.L.C. (the "Borrower"). The Lender and the Borrower are sometimes referred to herein collectively as the "Parties "and each as a "Party."

Whereas, the Parties desire to modify certain terms of the Business Loan Agreement ███████ dated 03/09/2018.

In consideration of the above premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, do hereby agree and amend the Agreement as follows:

Borrower may prepay Borrower's loan in whole using the following schedule:
- Within the period prior to three months, after the date of funding, the payoff will be $183,000.00
- Within the period between three months and four months, after the date of funding, the payoff will be $186,000.00
- Within the period between four months and five months, after the date of funding, the payoff will be $189,000.00
- Within the period between five months and six months, after the date of funding, the payoff will be $193,500.00
- Within the period between six months and seven months, after the date of funding, the payoff will be $199,500.00

If Borrower elects to prepay Business Loan Agreement ███████ the sum of payments made up to that point will be applied and deducted from the aforementioned prepaid schedule of payments.

*The prepayment discount schedule is offered in good faith and must meet the following criteria to apply:
- The borrower's status must be "as agreed";
- At no point can the borrowers account reach a status of "re-write, modified, forbearance" or any other status other than as agreed.
- The balance cannot be satisfied by any entity other than the Borrower.

The Agreement will remain in full force and effect as modified by this Amendment. This Amendment will be governed by and construed in accordance with the laws of the State of California without giving effect to the principles of conflicts of laws. This Amendment may be executed in counterparts, all of which together will constitute one and the same instrument. Facsimile signatures will be deemed to be original signatures and each party hereto may rely on a facsimile signature as an original for purposes of enforcing this Amendment.

IN WITNESS WHEREOF, each of the undersigned has executed, or has caused to be executed, this Amendment as of the date first written above.

**Borrower: Double Rafter H Construction Company, L.L.C.**

By: X _[signature]_

**Name:** Traeger Hamilton

**Title:** Member

**Date:** 03/09/2018

7

Exhibit 2

# PROMISSORY NOTE
## (Note No. 237-321533-1)

THIS PROMISSORY NOTE, dated 03/09/2018 (this "Note"), is made and given by the undersigned borrower ("Borrower") in connection with that certain Business Loan Agreement (agreement no. ▓▓▓▓▓▓▓), dated 03/09/2018 (the "Business Loan Agreement"), made by Borrower in favor of BofI Federal Bank ("Lender"). Reference is made to the Business Loan Agreement for a statement of the terms and conditions under which the Loan was made and a description of the terms and conditions upon which the maturity of the Loan may be accelerated, and for a description of the Collateral securing the Loan. This Note is subject to all of the terms of the Business Loan Agreement. Capitalized terms used and not otherwise defined in this Note will have same respective meanings given to such terms in the Business Loan Agreement.

For value received, Borrower hereby promises to pay to the order of Lender the Total Repayment Amount shown on the face page of the Business Loan Agreement in accordance with the Payment Schedule shown on the face page of the Business Loan Agreement.

Borrower will enroll in Lender's Automatic Payment Plan and authorizes Lender to collect required payments as provided in the Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits), which is included in the Business Loan Agreement. All payments made hereunder will be paid in in U.S. Dollars and will be paid free and clear of, and without reduction by reason of, any deduction, setoff, or counterclaim.

Borrower hereby authorizes Lender and/or Servicer to record in its internal records the date and amount of the Loan, the date and amount of each payment hereunder, and the resulting unpaid balance of the Total Repayment Amount. Lender's and/or Servicer's internal records will be determinative (in the absence of manifest error) of the existence and amounts of the Obligations recorded therein; provided, that the failure of Lender or Servicer to maintain such records or any error therein will not in any manner affect the Obligations of Borrower.

This Note or any interest herein may be transferred, sold or assigned by Lender in accordance with Section 17 of the Business Loan Agreement.

No delay or omission of Lender or Servicer in exercising any rights or remedies under this Note, including those arising in connection with any Event of Default, will be construed as a waiver thereof or as an acquiescence therein, nor will any single or partial exercise thereof preclude any further exercise thereof. Lender (or Servicer, acting on Lender's behalf) may, at its option, waive any of the conditions herein and no such waiver will be deemed to be a waiver of Lender's rights hereunder, but rather will be deemed to have been pursuant to this Note and not in modification thereof. No waiver of any Event of Default will be construed to be a waiver of or acquiescence in or consent to any preceding or subsequent Event of Default.

No provision of this Note may be amended, modified, supplemented, changed, waived, discharged or terminated unless Lender (or Servicer, acting on Lender's behalf) consents thereto in writing. In case any one or more of the provisions contained in this Note should be held to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein will not in any way be affected or impaired thereby. This Note will be binding upon Borrower and its successors and assigns and inure to the benefit of Lender and its successors and assigns. Time is of the essence of this Note and the performance of each of the covenants and agreements contained herein. This Note will be governed by and construed in accordance with applicable federal law and (to the extent not preempted by federal law) California law without regard to internal principles of conflict of laws. If Borrower consists of more than one person or entity, the obligations of Borrower will be the joint and several obligations of all such persons and entities, and any married person who executes this Note agrees that recourse may be had against community property assets and against his or her separate property for satisfaction of all Obligations.

Borrower will pay all reasonable fees and expenses, including without limitation reasonable attorneys' fees, incurred by Lender in the enforcement or attempt to enforce any Obligations not performed when due. Borrower, to the fullest extent permitted by law, (a) waives diligence, presentment, demand, notice of nonpayment, protest, notice of protest, and notice of every kind; (b) waives the right to assert the defense of any statute of limitations to any debt or obligation hereunder; and (c) consents to renewals and extensions of time for the payment of any amounts due under this Note. The term "Borrower" includes the undersigned and any successors-in-interest thereto. The term "Lender" includes, without limitation, any holder of this Note. This Note incorporates by reference the arbitration, jurisdiction and venue provisions set forth in Section 20 of the Business Loan Agreement.

This Note is a "transferable record" as defined in applicable law relating to electronic transactions. Therefore, the holder of this Note may, on behalf of Borrower, create a microfilm or optical disk or other electronic image of this Note that is an authoritative copy as defined in such law. The holder of this Note may store the authoritative copy of such Note in its electronic form and then destroy the paper original as part of the holder's normal business practices. The holder, on its own behalf, may control and transfer such authoritative copy as permitted by such law.

IN WITNESS WHEREOF, the undersigned Borrower has executed this Note as of the date first above written.

**BORROWER:**

Double Rafter H Construction Company, L.L.C.
[PRINTED NAME OF BORROWER]

Traeger Hamilton Member
[NAME AND TITLE OF AUTHORIZED SIGNER IF BORROWER IS AN ENTITY]

*(signature)*

[SIGNATURE]